# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**TONY D. WALKER**,                                    **Case No. 13-cv-3-pp**

                     Plaintiff,

      v.

**EDWARD WALL, DEIRDRE MORGAN,**
**CATHY JESS, CHARLES FACKTOR,**
**AMY BASTEN, MICHAEL BAENEN,**
**JESSICA LEGOIS, AND MICHAEL MOHR,**

               Defendants.

---

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 72) AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 58)

---

The *pro se* plaintiff, Tony D. Walker, is a Wisconsin state prisoner. On April 25, 2013, Judge Lynn Adelman (the judge assigned to the case at that time) issued an order allowing the plaintiff to proceed on a claim that the defendants denied him access to the courts in violation of the United States Constitution when they refused to provide him with a litigation loan to cover costs associated with making photocopies, obtaining court forms, and paying for postage. Dkt. No. 9. The plaintiff had alleged that, as a result of his inability to afford these costs, he was unable to provide the Brown County Circuit Court with documents required to file a petition for writ of certiorari (the "Petition"). Dkt. No. 1 at 13. Ultimately, the Brown County Circuit Court dismissed the plaintiff's Petition. Id.

1

Both parties have filed motions for summary judgment, which are now fully briefed. For the reasons stated below, the court denies the plaintiff's motion and grants the defendants' motion.

## I.   FACTS[1]

### A.   Parties

At all relevant times, the plaintiff was a prisoner in the Wisconsin Department of Corrections (DOC), incarcerated at Green Bay Correctional Institution (GBCI). Dkt. No. 92 at 1.

All of the defendants were DOC employees during the relevant time period:  Edward Wall is the secretary of the DOC, Dkt. No. 74 at 2, and Deirdre Morgan is the deputy secretary, Dkt. No. 92 at 15. Cathy Jess is the Division of Adult Institutions (DAI) Administrator for the DOC. Id. at 2. Michael Baenen was the warden at GBCI. Id. at 14. Jessica Legois was a financial specialist at GBCI. Id. at 11. Amy Basten is the Correctional Management Services Director at GBCI. Id. at 1. Michael Mohr was the inmate complaint examiner at GBCI, id. at 14, and Charles Facktor is a corrections complaint examiner, id.

### B.   The Litigation Loan Program

The litigation loan program at GBCI is administered by the business office. Id. at 7. Litigation loans are made to prisoners by the DOC for the purpose of purchasing paper, photocopies, postage, or other items related to prisoner-commenced litigation. Id.

---

[1] The court takes the facts from the "Plaintiff's Proposed Findings of Fact for Summary Judgment" (Dkt. No. 74) and "Defendants' Reply to Plaintiff's Response to Defendants' Proposed Findings of Fact" (Dkt. No. 92). The facts in this section are undisputed unless otherwise indicated.

In 2011, the Wisconsin legislature revised the statute relating to legal loans to prisoners. The revised statute stated, in part:

> No prisoner may receive more than $100 annually in litigation loans, except that any amount of the debt the prisoner repays during the year may be advanced to the prisoner again without counting against the $100 litigation loan limit. No prisoner may receive a litigation loan in any amount until he or she has repaid a prior loan in full or has made arrangement for repayment.

Wis. Stat. §301.328(1M).

As a result of the revisions to the statute, the DAI instituted a new version of DAI Policy and Procedure 309.51.01, which states, in part: "The [DAI] shall loan up to $100 annually to indigent inmates for supplies, photocopies, and postage to allow them access to the courts for litigation related to their own cases." Dkt. 60-1 at 1. The policy further explained, however, that "[l]egal loans will be denied to inmates who have not fully repaid any prior year's loan . . . ." Id. at 3. This requirement for denial was not absolute; it allowed inmates to obtain litigation loans without repaying prior loans or to obtain loans in excess of the $100 annual limit in fourteen specified circumstances. Id. at 3-4.

In addition to the supplies, photocopies, and postage that inmates may purchase with litigation loan funds, GBCI also provides indigent inmates with limited free supplies. Dkt. No. 73 at 10.  Specifically, GBCI provides indigent inmates with one free petition for leave to proceed without paying costs and fees form per year (additional copies of the form are $0.15) and one free letter per week (a free letter is defined as an envelope, two sheets of paper, one pen

insert, and one ounce First Class postage). Id. at 10-11. The plaintiff indicates that inmates are not permitted to "stockpile the weekly free supplies . . . ." Id. at 11.

GBCI also provides all inmates with a free copy of any ICE recommendation they file as well as the reviewing authority's decision once a final decision has been made. If an inmate appeals the decision to the Central Complaint Examiner's (CCE) office, a free copy of the CCE's recommendation and the reviewing authority's decision is given to the inmate once the Office of the Secretary has made their decision. Additional photocopies of these documents are $0.15 per page.

According to the plaintiff, GBCI does not provide inmates with a free copy of their six-month trust account statements but charges $0.15 per page. Dkt. No. 92 at 21. The defendants clarify that a litigation loan requested for the purpose of obtaining the inmate's six-month trust account statement will never be denied to an inmate regardless of their outstanding loan debt. Id.

C.    The Plaintiff's Conduct Report

On July 25, 2012, a GBCI staff member issued a conduct report to the plaintiff alleging the plaintiff violated Wis. Admin. Code §DOC 303.27 (lying) and DOC 303.34 (theft). Dkt. No. 38-2 at 36-37. Specifically, the conduct report accused the plaintiff of leaving the library with books he had not checked out and of having additional library items in his cell that he had not checked out. Id.

4

On July 26, 2012, the plaintiff received a Notice of Major Disciplinary Hearing Rights and Waiver of Major Hearing and Waiver of Time, which informed the plaintiff that a hearing would be held no sooner than two days and generally no more than twenty-one days after the plaintiff received the conduct report. Id. at 38-39.

The form contains a number of fields to be filled in, and a number of boxes for inmates to check. The completed form in this case indicated the following:

1.  I read or had read to me the notice of major (formal due process) disciplinary hearing rights;
2.  I understand what my rights are;
3.  I understand that when I waive my rights, I waive the right to:
    A staff advocate;
    To request a witness;
    Other possible rights in a formal due process hearing;
4.  I waive my right to a formal due process hearing (also check box a or b)
    a.  I admit I am guilty
...

Waiver of Time Limits (All Hearings):

I waive the 2 day time limit and have no objection to a hearing sooner

I waive the 21 day limit

I have checked the appropriate boxes above and my signature means that:

I waive a formal due process (major) hearing or

I waive time limits or

I waive both due process (major) hearing and the time limits

5

Id. at 39. The plaintiff states that someone else filled out the form, but he does not dispute that he signed it after it was filled out. Dkt. No. 86 at 2.

On August 4, 2012, a major disciplinary hearing took place, and the hearing officer found the plaintiff guilty of DOC 303.27 and DOC 303.34. Id. at 40. The hearing officer ordered sixteen days of cell confinement as discipline. Id.

D.    The Plaintiff's Application for a Litigation Loan

On October 24, 2012, the GBCI business office received from the plaintiff an application for a litigation loan, so that he could file a petition for writ of certiorari in the Brown County Circuit Court. Dkt. No. 92 at 11. See also Dkt. No. 60-3 at 1 (the loan application). On October 24, defendant Legois denied the plaintiff's loan application, because his court action did not meet the criteria of DAI 309.51.01 (which applies to inmates with litigation loan debts from previous years). Id. On October 26, 2012, the plaintiff sent a letter to Basten about the denial of his legal loan. Dkt. No. 38-1 at 17. The plaintiff stated that he needed the loan because without it he could not obtain exhaustion documentation, a copy of his six-month statement, or mail the oversized envelope to the court. Id. On November 7, 2012, Basten responded, explaining that the plaintiff had a litigation loan debt of more than $5,000 as a result of litigation initiated by the plaintiff from 1996 through 2012, and that filing a writ of certiorari did not fit one of the fourteen exceptions to the policy. Id. at 19.

On October 29, 2012, the institution complaint examiner's office received the plaintiff's complaint in which he complained that he had applied for a legal loan but that his application had been denied. Id. at 20. On October 31, 2012, defendant Mohr recommended that the complaint be dismissed because the plaintiff had not fully repaid the prior year's loan. Id. at 22. On the same day, defendant Baenen agreed with Mohr and dismissed the complaint. Id. at 23.

On November 8, 2012, the Central Complaint Examiner's Office received a Request for Correctional Complaint Examiner Review from the plaintiff. Id. at 26. After reviewing that request, defendant Facktor stated, "The institution's decision reasonably and appropriately addressed the issue raised by this inmate. On appeal, the inmate presented no information to warrant a recommendation overturning that decision. Thus, it is recommended this appeal be dismissed." Id. at 27. On November 19, 2012, defendant Morgan dismissed the plaintiff's appeal, noting that Facktor's recommendation was accepted as defendant Secretary Wall's decision. Id. at 28.

D.     The Plaintiff's Petition for Writ of Certiorari

On November 13, 2012, the plaintiff filed his petition for certiorari, in which he alleged three procedural violations/errors in the July 25, 2012 conduct report he received. Dkt. No. 61-2 at 4-5. Specifically, the petition complained that:

1. Petitioner was never informed of the time, date, or place of the hearing in violation of Anderson-El v. Cooke, 2000 WI 40; P2
2. The conduct report is defective where it alleges that petitioner violated the rules of the institution but

7

> the C.R. only contains Wis. Adm. Code provisions;
> and
>
> 3. The institution did not have jurisdiction over the
>    C.R. where violation of the rules are crimes under
>    §946.73, Wis. Stats, only punishable by 30 days in
>    jail as a class C demeanor.

Id. at 5.

On December 12, 2012, the Brown County Circuit Court denied the petition because the plaintiff failed to provide documentation of: 1) exhaustion of all available administrative remedies; 2) an original Wisconsin Department of Justice certification concerning prior dismissals; 3) an authorization to withhold money from prisoner trust account; 4) a certified copy of the prisoner trust fund account for the six months preceding the date of the petition; 5) a properly completed affidavit of indigency; and 6) sufficient copies of the pleadings. Id. at 1-2.

### E.    The Parties' Cross-Motions for Summary Judgment

On December 29, 2014, the defendants filed their motion for summary judgment. Dkt. No. 58. On May 7, 2015, the plaintiff filed his own motion for summary judgment. Dkt. No. 72. Both motions were fully briefed as of July 3, 2015.

## II.    DISCUSSION

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317,

8

324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." <u>Anderson</u>, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.    <u>Access to the Courts</u>

"Prisoners have a constitutional right to 'meaningful' access to the courts." <u>Gentry v. Duckworth</u>, 65 F.3d 555, 558 (7th Cir. 1995) (citing <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977)) (other citations omitted). While access to courts claims most commonly involve a prisoner's access to a law library, the Supreme Court has instructed that prisoners are entitled to basic scribe materials to prepare their legal papers. <u>Bounds</u>, 430 U.S. at 824. The need for

9

this is obvious: "Being able to formulate abstract legal theories is insufficient to give access to the courts without the physical means of filing a complaint based on those theories." Gentry, 65 F.3d at 558.

The Seventh Circuit has established a two-part test to determine whether prison officials have violated the right of access to the court. Id. (citing Smith v. Shawnee Library Sys., 60 F.3d 317 (7th Cir. 1995); Jenkins v. Lane, 977 F.2d 266, 268 (7th Cir. 1992)). First, a prisoner must show that prison officials failed to assist the prisoner in the preparation and filing of meaningful legal papers, which can occur, as in this case, by the prison officials failing to provide adequate scribe materials. Gentry, 65 F.3d at 558. Second, the prisoner must show he suffered an actual injury as a result of the denial of access. Lewis v. Casey, 518 U.S. 343, 351 (1996). Generally, to satisfy this latter requirement, "an inmate need not show that if he had been provided with adequate legal facilities he would have prevailed in the lawsuit. Rather, he need only show that he was prevented 'from litigating a nonfrivolous case.'" Davis v. Milwaukee Cnty, 225 F.Supp.2d 967, 971-72 (E.D. Wis. 2002) (quoting Walters v. Edgar, 163 F.3d 430, 434 (7th Cir. 1998)) (internal citations omitted). Such a standard should eliminate the need for an extensive analysis of the merits of the underlying case, so as to avoid a mini-trial within a trial.

C.    Application of the Law to the Facts of the Plaintiff's Case

       1.    *Because the plaintiff's petition was frivolous, he cannot state a claim that the defendants denied him access to the courts.*

The plaintiff argues that had the defendants loaned him money via the litigation loan program, he would have been able to afford the photocopies,

supplies, and postage required for him to meet the filing requirements for the petition. Dkt. No. 72 at 1. While the defendants concede that they did not provide him a litigation loan and that, as an indigent inmate, the plaintiff was unable to otherwise afford the required purchases, the defendants do not concede that these facts were the determining factors that prevented the plaintiff from having meaningful access to the courts. The defendants' argument rests principally on the grounds that they provided the plaintiff with one free letter per week and that, although they would not loan him money for this case, they were willing to loan the plaintiff money for purchases in other cases that fell within the fourteen exceptions to the general policy.

The court need not determine whether the facts the defendants assert are sufficient to demonstrate that they provided the plaintiff with meaningful access to the courts, because the plaintiff cannot establish that he suffered any detriment. Specifically, the court finds that the Brown County Circuit Court would have dismissed the plaintiff's petition regardless of whether he'd provided the required documents, because all of the "errors" identified in the petition were frivolous and lacked an arguable basis in either law or fact. The court will discuss each alleged error in turn.

**a.      Notification of the date, time, and place of their disciplinary hearing**

The first alleged error identified by the plaintiff in his Petition is that "[p]etitioner was never informed of the time, date, or place of the hearing in violation of Anderson-El v. Cooke, 2000 WI 40; P2." Dkt. No. 61-2 at 5. The plaintiff had, however, voluntarily forfeited his entitlement to notice when he

11

signed the form entitled "Notice of Major Disciplinary Hearing Rights and Waiver of Major Hearing and Waiver of Time" (form DOC-71). Dkt. No. 38-2 at 39; Dkt. No. 86 at 2.

The plaintiff responds, when a prisoner is served with a copy of a conduct report and hearing rights form, he is asked if he wants a full due process hearing or a simple hearing under the minor hearing procedures. Dkt. No. 92 at ¶8. The person serving the hearing rights form fills out the form according to the prisoner's preferences, dates the form, and then presents the form to the prisoner for signature. Id. While it may be true that someone else fills out the form, the plaintiff admits that he signed the completed form. Dkt. No. 86 at 2.

Specifically, the form that the plaintiff signed included the following notice: "The Security Director made this hearing procedure a formal due process hearing. You have many rights. You may give up all of these rights and have an informal hearing in accordance with DOC 303.76(2)." Dkt. No. 63-1 at 8. A series of hand-checked boxes followed these notices, including: 1) "I waive my right to a formal due process hearing"; 2) "I admit I am guilty"; 3) "I waive the 2 day time limit and have no objections to a hearing sooner"; and 4) "I waive both due process (major) hearing and the time limits." Id.

The plaintiff now argues, in essence, that the defendants violated his right to specific notice for a hearing that he had waived his right to have. This argument is illogical. Further, as the defendants point out, constitutional due

process procedures, when applicable[2], require only that a person receive written notice of the alleged violations at least twenty-four hours prior to a hearing. Wolff v. McDonnell, 418 U.S. 539, 564 (1974). The plaintiff received such notice over a week prior to his hearing.

While state procedures did at one time require an institution to provide a second, more detailed notice of the date, time, and location of the hearing, the DOC eliminated that requirement by repealing the code provision upon which the plaintiff relies. The version of Wis. Admin. Code § DOC 303.81 in effect in 2012 did not contain subsection (9) (the subsection relied on by the plaintiff for the more detailed notice). Thus, the only notice to which the plaintiff arguably could have been entitled was the notice the Constitution requires, which the plaintiff admits he received.

This first alleged "error" was frivolous, and the plaintiff suffered no harm from his inability to raise it.

### b. Violation of institution rules and regulations versus the Wisconsin Administrative Code

The second error alleged in the petition is that "[t]he conduct report is defective where it alleges that petitioner violated the rules of the institution but the C.R. only contains Wis. Adm. Code provisions." Dkt. No. 61-2 at 5. According to the plaintiff, in Wisconsin, while the written notice of the charges (form DOC-17) is separate from the conduct report, it must be served with the conduct report. Dkt. 87 at 17.

---

[2] Judge Adelman decided in his screening order that the plaintiff had not stated a federal due process claim, because his sentence of sixteen days cell confinement did not implicate a liberty interest. Dkt. No. 9 at 6.

The conduct report is dated July 25, 2012. Dkt. No. 63-1 at 5. The Notice of Major Disciplinary Hearing (Form DOC-17), dated July 26, 2012, states: "You have been accused and charged with a violation(s) of the rules and regulations of the institution which the Administrative Rule DOC 303.68(3) or Security Director has designated as a major offense *as stated in the above-referenced Conduct Report given to you on 7-26, 2012."* Dkt. No. 63-1 at 7. (emphasis added). Reviewing these documents together, it appears that the plaintiff received the conduct report on the same date that he received the Notice of Major Disciplinary Hearing.

The plaintiff alleges, however, that the conduct report did not advise him of the specific charges being levied against him. Dkt. No. 87 at 17-18. He argues that, while the conduct report notifies him that he violated the rules of the institution, each institution has its own rules, so simply telling him that he violated institution rules does not equate to notifying him of the charges against him. <u>Id.</u>

This claim, too, is frivolous. At the top of the first page of the conduct report, there is a box entitled "Rule Allegedly Violated." Dkt. No. 63-1 at 4. True, there are boxes in which the person completing the report may list the number of the DOC rule the inmate allegedly violated. <u>Id.</u> But right beside those boxes are blank lines on which to place a description of the actual charges against the inmate. <u>Id.</u> In this case, the person completing the report— an employee named Holterman—put the words "lying" and "theft" on the lines next to the boxes. <u>Id.</u> For the plaintiff to argue that he was not notified that he

14

was facing charges for lying and theft is frivolous, and the plaintiff's inability to raise it did not harm him.

### c. GBCI's jurisdiction over the violation

The final alleged error identified by the plaintiff in his writ was that "[t]he institution did not have jurisdiction over the C.R. where violation of the rules are crimes under Wis. Stat. §946.73, only punishable by 30 days in jail as a class C misdemeanor." Dkt. 61-2 at 5.

The conduct report indicates violations of two rules: DOC 303.27[3] "Lying" and DOC 303.34 "Theft." Dkt. 63-1 at 4. Both of these rules are contained in the Wisconsin Administrative Code Chapter entitled DOC Discipline. DOC 303.01(1), which is the first subsection in Subchapter I, General Provisions, states in part, "The rules governing inmate conduct under this chapter describe the conduct for which an inmate may be disciplined and the procedures for the imposition of discipline." Subchapter X, Disciplinary Procedure and Penalties, states:

> The institution may deal with a violation of ss. DOC 303.12 to 303.63 in the following ways:
>
> . . .
>
> (3) Staff may refer any violation to the security director in writing by a conduct report . . . . The security director may deal with these violations as follows:
>
> . . .

---

[3] References to the Wis. Admin. Code ch. DOC 303 are to the Register, December 2006 version, which is the version in effect at the time the plaintiff received his conduct report.

15

(c) If the violation is a major one, the security director shall refer the matter to a hearing officer . . . .

. . .

(4) The security director *may* refer violations of the criminal law to law enforcement authorities for further investigation and prosecution. *Whether or not prosecution is started, the institution may handle the incident as a disciplinary offense.*

Wis. Stat. DOC § 303.64 (emphasis added).

The above provisions make clear that it is within the discretion of the security director whether to refer criminal law violations (if there is cause to believe an inmate has committed a crime) to law enforcement authorities. Further, even if the security director decides to make a criminal referral to law enforcement, this does not prevent the institution from bringing disciplinary action. The plaintiff's claim that GBCI was obligated to refer the library incident to law enforcement authorities, and did not have authority to proceed with a disciplinary hearing, is flatly contradicted by the language of §303.64. Thus, this argument is frivolous, and the plaintiff did not suffer harm from his inability to raise it.

Because the claims the plaintiff wished to present in his petition for certiorari were frivolous, the plaintiff cannot establish that he suffered an actual injury from his inability to present them to the Brown County Circuit Court. Accordingly, he cannot state a claim that the defendants violated his constitutional right to access the courts. Because he does not have a basis for asserting the constitutional claim Judge Adelman allowed him to prosecute,

16

the court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

D.    <u>The Defendants' Request that the Court Assess a "Strike" Against the Plaintiff</u>

The defendants argue that not only does the plaintiff's complaint fail to state a claim for a constitutional violation, but that the complaint is malicious, because it demonstrates the plaintiff's subjective intent to harass the defendants. Dkt. No. 90 at 12. The defendants highlight a nine-page document the plaintiff filed entitled "Plaintiff's Offer of Resolution." Dkt. No. 81. That document contained an itemized list of twenty-nine "demands," including demands for: three million dollars; a CD player and up to twenty-five CDs (including some with explicit lyrics); an electronic drum machine; a pair of "Beats by Dr. Dre" ear buds; a flat-screen, high-definition TV; specialized sports attire; ten pairs of shoes per year, of specific types; authorization to purchase various Penthouse publications; DVD players, turn tables and a DJ package; meals from Pizza Hut, Dominos or Jimmy Johns on Wednesday, Fridays, Saturdays, Sundays, holidays and his birthday; a laptop computer; Play Station 4 or Xbox One and up to fifteen games; and double portions of every meal. <u>Id.</u> at 4-9. The defendants argue that the ridiculous nature of the plaintiff's demands show that he is not seeking meaningful redress for a perceived wrong, but is litigating for sport to vex and harass the defendants and correctional workers. Dkt. No. 90 at 13.

Section 1915A of the Prisoner Litigation Reform Act requires courts to "screen" complaints to identify cognizable claims, and to dismiss the complaint if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §1915A. If a court determines that a complaint should be dismissed in its entirety at the screening stage, the court issues a "strike" against the prisoner. Section 1915(g) prohibits a prisoner from bringing a civil action without prepaying the full filing fee if the prisoner has incurred three strikes. 28 U.S.C. §1915(g).

Nothing in §1915(g) limits courts to issuing strikes only at the screening stage. That section states that a prisoner incurs a strike if the prisoner has "brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ." A case that is dismissed on summary judgment because it alleges a frivolous cause of action, therefore, may earn the plaintiff a strike. See Blakely v. Wards, 738 F.3d 607, 613 (4th Cir. 2013) ("It would subvert the PLRA's very purpose to prevent cases dismissed on summary judgment from counting as strikes even when those cases were expressly deemed frivolous, malicious, or failing to state a claim.").

The issue this court must consider is not whether the plaintiff filed this lawsuit in order to harass the defendants, or whether he filed it in an attempt to coerce the defendants into giving him things that many people who aren't in prison don't have. Rather, the court must consider whether, regardless of the

18

plaintiff's motive, his complaint states a non-frivolous claim upon which relief may be granted.

On April 25, 2013, Judge Adelman screened the plaintiff's complaint, dismissing some claims and allowing the plaintiff to proceed only on his access to the courts claim. Dkt. No. 9. He dismissed the plaintiff's claim that the defendants violated his due process rights by bringing administrative proceedings against him rather than referring his case to law enforcement for criminal charges. Id. at 5. He dismissed the plaintiff's claim that the defendants did not give him notice of the date, time and place of his disciplinary hearing, and that they did not give him notice of the actual charges against him. Id. at 5-6. These are the very claims that the plaintiff raised in his petition for certiorari to the Brown County Circuit Court, the claims that he alleges he was unable to present because the defendants did not give him access to that court. Judge Adelman found those claims frivolous at the screening stage.

Judge Adelman allowed the plaintiff to proceed on his access to courts claim because Judge Adelman said that "[a]t this stage of the proceedings, I cannot determine whether plaintiff's state case is 'legitimate' or nonfrivolous under state law." Id. at 7. Since Judge Adelman made that decision, this court has reviewed the plaintiff's complaint, the motions for summary judgment, and the many attachments the parties have submitted. Those documents make clear, as the court has stated above, that the plaintiff's underlying state case was frivolous, and therefore, the plaintiff's access to the courts claim also was

19

frivolous, because he did not suffer an actual injury from an inability to file his petition. The sole reason that this court is granting the defendants' motion for summary judgment and dismissing the complaint is because the plaintiff has failed to state any claim upon which relief could be granted. Under 28 U.S.C. §1915(g), the court must assess a strike against the plaintiff.

According to the court's records, this is the plaintiff's third strike. Thus, he may no longer bring a civil action or appeal a judgment without first paying, up front, all filing fees, unless he can prove that he is under imminent danger of serious physical injury. 28 U.S.C. §1915(g).

## III.   CONCLUSION

The court **ORDERS** that the defendants' motion for summary judgment (Dkt. No. 58) is **GRANTED**.

The court **ORDERS** that the plaintiff's motion for summary judgment (Dkt. No. 72) is **DENIED**.

The court finds that the plaintiff has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1). The court will enter judgment accordingly.

The court **ORDERS** that the clerk of court reflect on the docket that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers bona fide arguments supporting his appeal.

Dated at Milwaukee this 21st day of September, 2015.

BY THE COURT:

_____

HON. PAMELA PEPPER
United States District Judge